## AS TO COMPETITIVE BIDDING FOR ENGINEERING WORK.

### Common Pleas Court of Hamilton County.

ROBERT S. ALCORN, A TAX-PAYER, v. VICTOR T. PRICE, DIRECTOR OF PUBLIC SERVICE, ET AL.

Decided, January 8, 1913.

*Municipal   Corporations—Contract   with   Engineers   for   Discovering Water  Waste  Need  Not  be  Submitted  to  Competitive  Bidding— Certificate  of  Auditor—Ordinance  Authorizing  Payment.*

1. A director of public service may employ, without competitive bidding, competent engineers to locate serious water waste, notwithstanding the cost thereof will exceed $500.
2. Where the funds to be used in paying for such services are not to be derived from taxation, but from the revenue arising from water rents, it is not necessary the auditor first certify that there are sufficient funds in the treasury and unappropriated to meet said obligation.
3. An ordinance, subsequently passed authorizing payment for such services of the sum required in excess of $500, is a mere granting of authority to pay a valid obligation and is itself valid.

*William  Thorndyke,* for plaintiff.
*Alfred Bettman,* contra.

O'CONNELL, J.

The plaintiff brings suit as a tax-payer to restrain the defendants from paying the sum of $3,350 to the Pitometer Company of New York, for services rendered in making a certain water waste survey of the city of Cincinnati.

For his cause of action he alleges irregularities in the methods pursued by the city in employing the company and in the mode adopted for payment.

The first objection urged is that the employment was illegal, because the amount involved being in excess of $500, advertisements should have been required for the work.

Another objection urged is that no certificate was required or obtained from the auditor that funds sufficient for the payment of the bill were in the treasury, unappropriated for any other purpose prior to the attempted employment.

Third, that the ordinance ratifying the employment of the Pitometer Company and authorizing payment, having been presented to council and adopted after the work was done, was illegal and void.

The first objection is not well taken. The water works authorities discovered that there was an excessive use of water from some source. They sought to discover the cause. It might have been due to waste on the part of consumers, or it might have been due to leakage from the water mains in the city streets. If from the latter cause, it was important to discover in what part of the city such leakage occurred.

The Pitometer Company is one engaged exclusively in the investigation of such questions, their employes being engineers trained in such work. It controls devices for use in such work. Owing to the topography of the city, great skill and experience is required in determining these questions, and of necessity only engineers of ability, skill and experience should be employed in such investigations. Manifestly, such work should not be left to competitive bidding.

The result to the city is the opinion of these experts as to the causes of the excessive use of water, whether by leakage or otherwise. The benefit to the city is the remedy supplied and the

recommendations made as the result of the tests made by the investigators and the opinion rendered thereon. The opinion obtained by the city therefore, should be that of some reliable authority and not the opinion of some one who would bid lowest for the privilege of hazarding an opinion.

It has been repeatedly held that where skill, experience and technical knowledge are required for services to be rendered to a municipality, competitive bidding is not required, nor is it the best means of obtaining the best services.

The second objection, to-wit, that the certificate of the auditor was not first obtained that sufficient funds were in the treasury unappropriated for any other purpose, in accordance with the provisions of Section 3806 of the General Code, is not well taken.

The funds to be used in the payment of these services was not derived from taxation. They were to be paid from water works funds arising from the revenues obtained from water rents; in other words, from the earnings of the water works department.

Our Supreme Court has held in a number of decisions, which have been followed, of course, by the lower courts in analogous cases, that such certificate is practically restricted to the expenditure of money arising from taxation, and for purposes which can readily and definitely be ascertained in advance of the annual or semi-annual appropriation of money for the uses of the municipality.

Nor is the third objection well taken.

If competitive bidding were required for the work to be done in discovering the causes of the water waste, and such bids were not solicited or obtained, then the illegal expenditure could not be cured by an ordinance authorizing payment after the work had been contracted for and after the work had been done. But competitive bidding was not and could not be required under the present circumstances. In the first place it was a practical impossibility to prepare and submit to bidders any specifications under which any bidder could submit his proposal.

What guide could the director of public service furnish? What would be the nature of the proposals submitted to bidders? The water works authorities were absolutely in the dark as to the

causes of the water waste, and themselves wished information and recommendations for remedying the situation.

Were the ordinance one authorizing the payment of money under a contract which was *ultra vires,* or under a contract which was by its terms and conditions illegal, then equity would interfere to restrain any payment thereunder.

Section 4328 of the General Code provides that when an expenditure in excess of $500 is contemplated by the director of public service, "such expenditure shall first be authorized and directed by ordinance of council. When so authorized and directed, the director of public service shall make a written contract with the lowest and best bidder."

It appearing that the services rendered were such as could not fall within the provisions of this section, equity will not enjoin an expenditure of public funds for failure to comply with its terms and conditions.

The ordinance in question does not seek to validate an invalid act of the director, nor does it attempt to make a contract with any person or company. It merely authorizes the payment of an obligation of the city in excess of $500. Sums less than that in amount are payable by the director at his discretion.

It is the opinion of the court, therefore, that the injunction prayed for should be refused and judgment entered for the defendant.